The final case is 22-6437, Kimble v. Swink. Professor Corzine. Your Honor, may it please the Court. Chief Judge Diaz, Judge Backer, Judge Rubin. My name is John Corzine. I'm here for the Wake Forest Appellate Advocacy Clinic. Under Local Rule 46, it's my pleasure to introduce the three, the two, the third-year law student counsel who will present. First, Claire McGee on the 12B6 issue. And second, Skylar Pruse on the qualified immunity issue. Thank you, Your Honor. Thank you, sir. Welcome to you. All right, Ms. McGee, whenever you're ready. May it please the Court. My name is Claire McGee, and I represent Plaintiff Appellant William Kimble as to his procedural due process claims. Without notice, explanation, or an opportunity to be heard, Mr. Kimble was transferred to and spent 398 days inside the restrictive conditions of a rehabilitative diversion unit, an RDU. On a 12B6 motion to dismiss, the District Court erroneously adopted the Magistrate's recommendation that Mr. Kimble's procedural due process claims be dismissed. However, under this Court's precedent, rather than the authority relied upon by the Magistrate, Mr. Kimble sufficiently alleges facts that show inadequate due process arising out of two distinct categories, Mr. Kimble's placement into the RDU and Mr. Kimble's progression through the RDU. Because Mr. Kimble His placement in the RDU in the first place, he did have hearings and opportunity to be heard when he was placed into RHCP, and RDU was a possibility under that, correct? Not for Mr. Kimble, Your Honor. RDU is a possibility for, according to the regulations for individuals who are accused under 1302E of the policies of assaulting a staff member. Here on page 19 of the Joint Appendix, you'll see that Mr. Kimble was accused of an AO4 infraction, which does not implicate an assault on a staff member. So he was not on notice when he was placed into the RHCP, that he could also The due process he received for the RHCP doesn't matter in terms of his initial placement in the RDU, correct? Correct, not for his placement. In my view, not for his placement into the RDU, and certainly not for his progression through the RDU. There was no review at all for his progression as I understand it. Maybe opposing counsel will tell me otherwise. Correct, Your Honor, and that's a point that the magistrate failed to reach. They did not address Mr. Kimble's progression through the RDU at all. However, as this court well knows, there's three things that Mr. Kimble need allege in his complaint to establish a procedural due process claim arising out of his progression through the RDU, and that's that he had a protected liberty interest, that the defendants deprived him of that interest, and that the defendants' procedures that they employed were insufficient. And all three are satisfied as to Mr. Kimble's progression through the RDU. First, his liberty interest is that he had a right to due process as he was being progressed through restrictive housing. That arises out of the two-prong test from Smith v. Collins, which comes from the Supreme Court's opinion in Sanden, that there be a basis for or an interest or expectation in state regulations for some sort of avoidance of the confinement, and second, that the conditions impose an atypical and significant hardship. So as to his progression, the expectation for review is very clear. First, in the regulations, it states that in the RDU there will be reviews conducted at the completion of each phase, and here Mr. Kimble alleges in his complaint that he never received a review. Not only that, that he didn't receive any notice, that he received no explanation for why he was either being progressed into the different phases or held back in the phases as he was in phase two of the RDU, and he also was not given the opportunity to have the hearing that was promised to him before he even entered the RDU. Mr. Kimble. Where does that expectation come from, the hearing? So the hearing is what he was promised as arising out of his placement into the RHCP. That's a different program, right? Yes, and that's just the incomplete process that he was given once he had entered into the RDU. He has a separate expectation and interest arising out of the RDU policies alone. Right, but once he was transferred out of the, and there are a lot of acronyms. I know. The RHCP. Why would he have any expectation of any process related to that program? Because the regulations promised him process. Oh, but only if he was in the program. In the RDU. Right. Yes, and so. Not the RHCP. Correct. So once he was placed into the RDU, he had an expectation that he would receive. Of reviews, you said, right? Of review, yes, Your Honor. But then you mentioned the expectation of a hearing with respect to RHCP, which is confusing to me because he's no longer in RHCP. He's now in this other program, and there may even not be an expectation there. I think maybe you'd better focus on what the due process and the process interest was with respect to RDU. Sure, so specifically, again, pointing to the addendum in the regulations, pages 7, 53, and 75, Mr. Kimball, the state creates a policy that he will receive review in the RDU. Is there any expectation that, well, I guess you said he didn't get anything, but any expectation that he was supposed to be present at these reviews? No, Your Honor, the regulations don't note that. However, as this Court said in Thorpe. They don't note one way or the other, or they don't note that he's required to be present? They don't note that he's required to be present, Your Honor. Okay, so he doesn't have to be present for the review. According to the regulations. However, this Court in Thorpe v. Clark noted that the most foundational due process guarantees are at a minimum notice and an opportunity to respond. So even if a review did happen, while Mr. Kimball alleges he never knew about said review, even if it did happen, Mr. Kimball didn't get the minimum foundational due process requirements of notice that the review is happening and an opportunity to at least respond, even if that took Let me understand that because I thought you, maybe you didn't conceive this, but I thought the point was made that, in theory, he might not be entitled to any process. But the fact that the state granted him process with respect to RHCP doesn't necessarily mean that it carries over to RDU. In theory, there could be no process, right? So why is it a problem if the process is a hearing where he's not present? It's a problem because if it's a hearing where he's not present and he is not allowed to at least receive notice and an opportunity to respond, even on paper, to contest the factual allegations, then it violates the third prong of whether or not someone has stated a claim for procedural due process, which is where the state's, or the defendant's in this case, procedures sufficient to avoid creating a single arbitrary level of review, which here they would. If the state were allowed to say, we promise we're going to review a defendant's continued confinement, we pinky promise, but provide no factual basis for that decision, never notify the inmate, then the prisoner could be progressed through any number of different programs, any number of different levels of security, housing where they're restricted and have different levels of access to education and access to personal property than they do in general population without... I think we're shifting gears now, which is what I wanted to do, is hear your argument about how the RDU is an atypical and significant hardship because when you look at prior case law, it doesn't seem so atypical and severe compared to in either the programs provided or the amount of time. Your Honor, as to the atypicality and significant hardship, you're correct that when you look at NKUMA and other decisions where there were different conditions, that Mr. Kimball's conditions are somewhat different. However, those cases were all decided on summary judgment when the prisoner had been given an opportunity to fully develop a record of the atypicality and significant hardship. And it was at that point that the court evaluated, okay, now we'll engage in this Wilkinson evaluation of whether or not this is an atypical and significant hardship. Here... Which case do you think is most akin to your case? I think the reasoning from this court's opinion in NKUMA is most akin. In that case, in evaluating the magnitude and severity, the indefiniteness, and the collateral consequences, the magnitude and severity, again, while that case did take place over 20 years, the key issue on the time difference there is the indefiniteness. And here, the RDU is an indefinite program. It establishes minimums, minimum amount of time at which a prisoner can spend in each of the phases, but absolutely no maximums. And so theoretically, a prisoner could be progressed through the RDU for multiple years. And, in fact, in the complaint, Mr. Kimball notes that some individuals, though it was not himself, had been in the RDU since it began in 2016, which was over four years at the time Mr. Kimball filed his complaint. And so NKUMA, and this court's reasoning in NKUMA, is what's important as to the magnitude and severity, especially because this court said in NKUMA, in quoting Wilkinson, that the goal at this point in litigation is not to engage in a point-by-point comparison, but rather to look at the totality of what Mr. Kimball has alleged in a complaint at a 12B6 stage in litigation and say, are these conditions atypical and significantly hard compared to the baseline of general population? Twenty-two hours a day alone in a cell is atypical to the general population. Being forced to consume your meal within 20 minutes alone in your cell is atypical to the general population. And the point, to some extent, of being placed in segregation is so that you do not enjoy all of the liberties that a general population prisoner enjoys. So looking at that in isolation, sort of siloing that issue  and saying, well, yes, that's the normative base, but we need to have some sort of comparative measure, do we not? Yes, Your Honor, I see my time will expire. May I complete your question? Yes. The normative base, being the general population and looking at, understanding that there should be some restrictions, especially arising out of a disciplinary infraction, that still has to be balanced against the foundational protections of due process. Mr. Kimball doesn't argue that he shouldn't have had all of these things take away from him, rather that he should have received notice, at a minimum, and an opportunity to respond that these were going to be the conditions he was subjected to in the RDU. May it please the Court, and good morning. My name is Skylar Pruce, and I also represent Mr. Kimball, and would like to address the second issue before this Court, which is whether the defendants are entitled to qualified immunity here. Mr. Kimball has alleged two deprivations of his constitutional due process rights. First, with his placement into, and second, his progression through restrictive confinement. Mr. Kimball's right to due process in his placement into restrictive confinement for an indefinite period was clearly established by case law from the U.S. Supreme Court in Wolf v. McDonnell, Hewitt v. Helms, and in Wilkinson v. Austin, while his right to due process in his progression through restrictive confinement was established by Hewitt v. Helms, as well as this Court's opinion in Nkuma v. Sterling. Because both of these rights were clearly established at the time of the violations, we would ask you find the defendants are not entitled to qualified immunity. In beginning with the progression argument, in looking at the Supreme Court's ruling in Hewitt, Hewitt established that inmates are entitled to periodic review while being progressed through restrictive confinement, and this is to ensure that administrative segregation is not used as a pretext for indefinite confinement. Nkuma expanded upon this and allowed inmates to challenge the sufficiency of the process that they received in regards to their progression through restrictive confinement. And in Williamson v. Sterling from this Court, the Court noted that, quote, thus the Nkuma decision gave clear notice to jail officials in 2015 that a long-term detention in solitary confinement, even when imposed for security reasons, justifies some level of procedural protections. In the complaint, Mr. Kimball alleges that he received none of that due process. And in going back to Williamson, the Court also noted that after the Nkuma decision, that defendants were not entitled to qualified immunity with respect to renewals in solitary confinement conditions if they failed to provide the plaintiff with a level of process that would at least satisfy Hewitt. So there is a constitutional floor at issue here, which Mr. Kimball alleges his process was beneath, as he received no process. Thus the right to his... He alleges he received no process, and at the 12B6 stage, in taking his allegations as true, that is what this Court should do as well. In addition, in Smith v. Collins, the Court noted that qualified immunity turns on whether the review mechanisms were meaningful in practice versus on paper. And in practice, Mr. Kimball alleges he got no process, Judge Thacker. In moving over to the progression argument, unless this Court has any further questions, or excuse me, over to the placement argument, unless this Court has any further questions on progression, Wolf, Hewitt, and Wilkinson clearly established that Mr. Kimball was entitled to some level of due process with his placement into restrictive confinement. Wolf established that despite an inmate's status, they are, quote, not wholly stripped of constitutional protections. He got his placement into the RDU? Yes. Not the first thing, because he got plenty of process there, correct? He got process for his placement into RHCP, Your Honor. However, RDU is a separate facility, and Mr. Kimball alleges he received no due process there. And in Wolf, the Court established that there is, again, a constitutional floor for due process in prison disciplinary settings, and those are, at a minimum, written notice of the violation, an opportunity to respond, and a statement after the fact as to evidence relied on and reasons for the disciplinary action. Mr. Kimball alleges that he received none of that when he was moved into the RDU. And going back to Wolf, these procedures satisfied, quote, the minimum requirements of due process. In looking at Hewitt, Hewitt continued this line of reasoning with strictly administrative segregation, still stating that there is a constitutional floor at play here where inmates must receive, when being moved into administrative segregation, notice and an opportunity to respond, again, which Mr. Kimball alleges he did not receive. In moving to Wilkinson, Wilkinson found a liberty interest in avoiding being placed into harsh conditions of confinement indefinitely, but also an interest in receiving meaningful procedural review due to the restrictive confinement for an indefinite period of time. With respect to the issue of the severity of the atypicality of the restriction, do we have to have a case on point that directly addresses the particulars of this restrictive environment for a jail official to be on notice that they could be held liable? No, Your Honor. In looking at the Supreme Court in Hope v. Pelzer, the court noted that officials can still be on notice that their conduct violates clearly established law, even in novel factual circumstances. What's the closest case to this case that would have put jail officials on notice that they could be on the hook? Just to clarify your question, for the placement into or the progression through? Well, just the nature of the confinement, the severity of the confinement, the atypicality of it. What would have put jail officials on notice that this might amount to a Constitution violation? We would look to Nkuma, Your Honor. As I see I'm about to run out of time. You can talk for as long as I'm talking. We would look to Nkuma, Your Honor, as in that case the court specifically looked at an inmate challenging the sufficiency of that review process, and then looking at Wolfe as well in establishing, again, that constitutional floor at issue here. But Nkuma, these are never nice conditions, but Nkuma was particularly bad, right? You had cavity searches and that kind of stuff going on. Can you really compare that to what was happening here, as bad as it was? Well, Your Honor, we would argue yes. As Mr. Kimmel never received any due process for his placement into restrictive confinement, and we can look at the conditions of the RDU as compared to the general population with the amount of time that they spent in their cells every day, as well as being shackled for prison visits. There are those similarities that do exist, and we would argue on the qualified immunity issue that Wilkinson as well as Wolfe and Hewitt gave officials clear notice, or excuse me, fair notice that their conduct violated clearly established law. Thank you. Mr. Williams. Thank you, Your Honor. Good morning. May it please the Court, my name is Alex Williams, and I represent the defendant appellees Swink and Cawthorne. Plaintiffs have correctfully framed this case to be, it's all about the RDU program. I use all those acronyms they used, RDU, RHCP, but essentially what they're claiming is that he did not get his due process. But what we see here is that he had several levels of due process. He had the first level of due process where he was charged with a disciplinary offense. He got notice. He got a hearing. He got a written decision. That's the precursor that steps him into RHCP, that eventually steps him into the RDU program. What was the process to progress through the RDU program? To progress through the RDU program? Uh-huh. That process would be the regular reviews that are done by the RDU staff, and that should have been all that he expected. That's all that the policy said that he would get. The policy did not specifically said you will not. He doesn't get any notice or opportunity to be heard for that progression under the policy? Your Honor, I think that the policy does not state one way or the other whether he gets notice or not. It just says that there will be regular reviews. Well, now he's alleging that he didn't get any reviews or any notice or opportunity to be heard. So why isn't that sufficient for him to have alleged at this stage a due process problem? Well, Your Honor, we know that's not true, at least for the review part of this, because he admits that he progressed through the program. So we know he got at least five reviews. He progressed, but that doesn't mean that he got notice and an opportunity to be heard at each stage of that progression. And he's saying he did not. He's alleging he did not. And, Your Honor, that may be true if he were going, I think that kind of hits back to, yes, he's alleging that he did not get that. But we have to look back and see, did he have a liberty interest to that? And what we see here is that. Right, I agree. You've got to go several steps. I'm just focusing on the last step, really. And I understand, Your Honor. And so I do think that he has alleged that he didn't get that notice and he didn't get that opportunity to participate in these reviews. We do know that those reviews occurred. We also know that the precedent. I guess we'd have to find that out in discovery. Well, I don't think we have to find that out in discovery because he admits in his complaint. He admits facts that necessarily defeat that, which is that he progressed through the program. He got these reviews. No, he doesn't say he got these reviews. He said he progressed through the program without the reviews. And I hear your argument to be, well, he progressed through the program, so he necessarily got these reviews. Just trust us, he got these reviews. Where is that in the record as it stands now, that he actually got notice and an opportunity to be heard before he progressed through the stages? Your Honor, I might be splitting hairs here, but I think he admits in his complaint that these, that the policy says these reviews were supposed to have occurred, that they did occur, but that he just wasn't present at them. I think that that is the splitting of hairs here. But that gets us back. Yeah, that's the opportunity to be heard part. Yes, Your Honor. Yeah. So, but I do think. He didn't have an opportunity. He is alleging he did not have an opportunity to be heard because he was not present at the reviews. That's correct, Your Honor. Right. And so. I take your point about the, we don't get there if we can't get, I believe your point is we don't get there if we can't get beyond the atypical conditions of environment, correct? That's correct, Your Honor. And why don't we get beyond that? The reason we don't get beyond that primarily is because the Supreme Court said in Sandlin that a limitation on privileges is something that is to be, is part of lawful incarceration. It's something that's to be expected by prisoners. And so what we see here is the RDU program does not strip prisoners of all these privileges. It just diminishes the use, frequency, or type. And so what we see here is it's not taking these privileges from these prisoners, it's just slightly diminishing them. For example, they're still entitled to visitation, just not contact visitation. They're still entitled to recreation, but it might be a little bit less. They're still entitled to TV, radio, all of personal property, all of these things that they would normally be entitled to in regular population, just a little bit less. And so that's why it's so different than Wilkinson and Kuma, Thorpe, Smith, all of these other cases, is because when you look at Wilkinson, they really hit on three things, and it was the deprivation of sleep, environmental and sensory stimuli, and the deprivation of human contact. And you don't see that in the RDU program. In fact, they admit in their own complaint that he was getting these things. And so, and I see Your Honor. Yes, Mr. Williams, I have a question. I just want to take you back to placement in advance of the progression or process. And I just want to clarify a factual issue for myself, and that is I understand the argument of your client to essentially be, you know, he got lots of process for placement in RHCP, and because of the nature of the infraction, he was going to RDU anyway. And so the fact that he essentially was sort of, you know, didn't get that May review and in March went to RDU doesn't really, you know, there was no due process violation in that process. And I understood, is it Ms. McGee, argued that in fact this was not an assault on a staff person. It was an AO4 infraction. And so that would not have happened in any event. In other words, he wasn't going to be shuttled to RDU regardless. Can you address that issue so that there's some clarity about that? Yes, Your Honor. I find it odd that she makes that argument because then in her complaint, she very clearly states that one of the requirements for the RDU is only that you just have to have an active RHCP status. It does not state that the requirements. Their own complaint says that the requirements for RDU is that you have to have an active RHCP status. It does not state that you have to commit this infraction versus that infraction. What is your position about what the actual policy is, regardless of the allegations? The actual policy would be that if you are on RHCP, regardless of what kind of infraction you committed, you could be placed possibly if you meet the other prerequisites, you could be placed into the RDU program. And so you take the position that that was his notice when he had the facility classification committee and the other opportunities to be heard with the PCC. Yes. The policy 1302 very clearly says that you can be placed in RDU in lieu of RHCP. And I think that plaintiff's own allegations and admissions that he knew that this was one of the requirements for the RDU program shows that that is something that they knew. Okay. Thank you. And so I do think that when we look at these conditions and looking at Wilkinson and how it's so different than the RDU program, Wilkinson involved the deprivation of sleep. It was 24 hours of lights on. We don't have that here. We only have 16 or 17 hours where the lights are on. So they have seven to eight hours where they can sleep with the lights off. Wilkinson also involved the complete deprivation of environmental and sensory stimuli. We don't have that here. They get TV, radio, magazines, books, libraries. They get to go outside. They get to have contact with other inmates during these group settings. Unless he wasn't able to access the library cart so he couldn't get books. Your Honor, I do not specifically recall whether that was one of his allegations. However, he did reference the policies extensively, which is why we included them as an addendum. And the policies do state that he gets access to the library. The other thing that Wilkinson talked about was the complete deprivation of human contact. Again, we don't have that in the RDU program. They do get time outside of their cells. They do have access to talk with other inmates. They do have these group settings where they're having classes. There's nothing like we see in Smith or Thorpe or in Kuma where they're denied mental health treatment or they're denied rehabilitative or educational programming. That's not what we have here. In fact, we have quite the opposite. We're trying to get them that type of programming. So I think that these cases are very different than in Kuma, Smith, and Thorpe. Not only from what kind of expectation that they have from a liberty interest perspective, but also the conditions themselves were not so atypical and significant. These are more akin to the two cases that I cited in our brief, Escobar-Avera from the Fifth Circuit and Likas from the Seventh Circuit. In those cases, you have conditions of confinement where the privileges are just drastically limited. And the courts are saying that's not a substantial, excuse me, an atypical and substantial hardship. It's just a limitation on privileges. And so with that, I think that this case falls very differently outside the other cases. I do think that Plaintiff was given adequate due process. And the reason I say that is the cases that we see where we're talking about whether they're giving adequate due process, they're being pulled from general population to a restrictive housing setting. In this case, Plaintiff admits that he got constitutionally adequate due process coming out of regular population. He doesn't dispute that. He doesn't allege that. What he alleges is that he should have had an additional set of due process to go from one form of restrictive housing to another form of restrictive housing. And I'm not aware of any court that has ever held that he needs additional due process safeguards to go from one set of restrictive housing conditions to another set of restrictive housing conditions. He already had that initial due process to get him in there. Well, the process is one defined by the regulations, right? So, in theory, if the state decided we're not going to allow for a process for a different type of segregated condition, that would be entirely appropriate, right? Yes, Your Honor. I do think Your Honor is right. Your Honor is going back to that initial liberty kind of interest, and that's correct. It is set by what the policy, what type of expectation the policy gives. And here the policies are very specific. The policies say if you commit these infractions, you can go to RHCP. If you go to RHCP, you can be put into the RDU program. If you are put into the RDU program, you will be given reviews by the RDU staff, not the DCC FCC process. And so I think that the expectation is very clear in DPS's policy about what Mr. Kimball could have expected. He just didn't take the time to connect those dots. But they are all very there, and they're all very clear. The last thing I will address, Your Honor, is qualified immunity. Qualified immunity is entitled to protect government employees from bad guesses in gray areas. And what we see with the cases in Kuma and Smith and Thorpe and all these other cases is that this is a hard thing for the courts to grapple with. It is something atypical and substantial hardship. Is it, do they have these liberty entries? Do they have this? And that's something that's very difficult for the courts to even grapple with. And so it's going to be difficult for these prison administrators to grapple with. But here, there's no case law that takes it from a restrictive housing setting and says you need to give additional due process to move him to another restrictive housing setting. All the cases that they've talked about and that they've cited, it talks about going from general population to restrictive housing population. Well, he doesn't dispute that. He doesn't say that he had a problem with that. He actually somewhat admits that he got adequate due process for that. So without there being that case law out there that says there needs to be this additional safeguard, qualified immunity should protect the defendants from any liability. I'll be happy to answer any additional questions that Your Honors may have. I have one more question. Well, I shouldn't say one more because now I'll break that vow, but I'll try to stick to one question. So there's an argument, I suppose, that having given the process that you gave in the RHCP program, the allegation is that the RDU program being even more severe than the RHCP programs in terms of its deprivations, you may take issue with that, but that's the allegations that Mr. Kimball had an expectation as a result of the process given in RHCP that something similar to that or more accommodating would be given to him in RDU. Why doesn't that hold? Your Honor, the policies very specifically say that's not true. Specifically 1302E that they referenced very specifically says right after that sentence where it says you can be placed in RDU in lieu of RHCP, the very next sentence is review for continuation will not be pursuant to the DCC or something along those lines. So the inmate is being told right then and there that their review is not going to be pursuant to the DCC. They're not going to go back to the DCC to see if they continue. Their reviews are going to be done by the RDU staff. The policy is very clear about that, and that sets the expectation for what he should have. That sets the basis for his expectation. Thank you very much. Thank you, Judge. Thank you, Your Honors. May it please the Court. A few points on rebuttal that I would like to direct the Court's attention back to our reply brief. Opposing counsel again raises arguments, as they did in their brief, as to being placed in the RDU in lieu of the RHCP, that we agree to certain allegations about the conditions in the RHCP regulations that 1302E only applies to any type of disciplinary infraction and not the specific one laid out in the policy. I would just direct the attention of the Court to the language of that policy specifically to read it carefully and note the differences in when a prisoner is on notice that they might be entering the RDU versus when they are not and what Mr. Kimball has alleged, and also to our reply brief as to the misstatements made during some of the statements made about what we do agree to in our brief that we rebut in our reply brief. But the other thing I'd like to address is Judge Thacker's point about reaching the atypicality and significant hardship piece of this first. I think the important thing to note is opposing counsel said that this case is very different from Nkuma, from Wilkinson. He cited a Fifth and Seventh Circuit case. In a sense, he's right. Every single one of those cases was determined on summary judgment. When a prisoner had been allowed to develop a full record, here we are on a 12B6 motion to dismiss. If this Court looks at the well-pled allegations in Mr. Kimball's complaint, it was drafted by North Carolina Prison and Legal Services and is very different from the pro se complaints that were filed in all of those other  If the allegations taken as true are not atypical to general population, then this Court will close the door on any prisoner who was placed into the RDU at any point being able to come to court and say the conditions of confinement were atypical and significantly difficult. But wouldn't the prisoner himself or herself best know what those conditions are? I mean, I get the point that discovery can sometimes be enlightening, but he lived through this and you made your allegations, not you, but the prior counsel in very detailed allegations as to what exactly happened to him. Why shouldn't we just simply accept that and decide whether as a matter of law those conditions are the kinds of atypical conditions that were found to be sufficient in other cases to raise a due process violation? I think for a few reasons, Judge Diaz, that this Court should allow this to continue on for additional factual discovery is while Mr. Kimball is the one who would know best what happened to him, he's included what happened to him to the best of his knowledge, working with someone who was outside of the prison and trying to draft a complaint. He's included allegations under Twithball that are sufficiently pled, but also if you read his complaint that he filed with this Court directly, his handwritten complaint, there's additional information that he maybe didn't know was relevant to have included in his complaint at the time, but that he raises about strip searches, about some of the situations that are similar to what happened to the plaintiffs in Wilkinson. And so for that reason, Mr. Kimball's complaint should be, this Court should reverse and remand and allow Mr. Kimball's complaint to survive the 12B6 motion and proceed to discovery. Thank you very much. Bruce? Your Honor, I really only have one point of rebuttal with what opposing counsel discussed in regards to the qualified immunity issue with there being no case going from restrictive to restrictive. And in that case, he's right. However, as this Court noted in Williams v. Strickland, this Court should not assume that government officials are incapable of drawing logical inferences. Government officials are expected to connect the dots and know that if X is illegal, then Y is illegal. If it would have been illegal for the defendants to not give Mr. Kimball due process to go into our IHCP, it is also illegal for them to not give Mr. Kimball due process going into RDU. In looking at Nkuma and recognizing that individuals are, or prisoners are allowed to challenge the sufficiency of their process if they do receive no process, in looking at this case, Mr. Kimball claims he received no process, and thus he should be allowed to challenge the sufficiency of that review. If the Court has no further questions, we would ask that you reverse and remand. I have one last question, and that is with respect to the indeterminate nature of his placement in RDU. Is it relevant, or can you address whether it's relevant if a claimant is pursuing an action as you are on behalf of your client after release from that, so sort of by definition it's not been indeterminate? Does it have to be indeterminate in the prisoner's mind at the time of, or can you address that a little bit? Yes, Your Honor. We would argue that it is indefinite in nature at the time he is being placed into solitary confinement as, in that sense, he has no knowledge of when he will be released. In looking at the policies and procedures here, there is a minimum amount of time, but in looking at the record on pages 14, 21, and 24 of the JA, it acknowledges that he stayed in specific phases of the RDU beyond those      confinement. And that is not what the court has heard as to when he would be released. Thank you very much. I know. I want to thank. The Wake Forest legal clinic for taking on this court appointed. Work and commend the two young lawyers who are law students who have appeared. The forest today, usually at the. End of the day. The fourth case. It's a little difficult to keep your attention, but that wasn't a problem. Here today for both council. Really appreciate. The thoughtful arguments on both sides. We'll come down and greet you all. Then take a short recess and we're going to meet briefly with some students from another law school. We're in the back. And paying close attention to this case as they did. The other. So again, thank you very much. We'll come down and greet you.
judges: Albert Diaz, Stephanie D. Thacker, Julie R. Rubin